# Appeal of the Pittsburgh, Allegheny, and Manchester Passenger Railway Company *et al.*

1. An act of Assembly incorporating a passenger railway company authorized it to lay tracks along certain streets of the city of Allegheny, " Provided, that before said company shall use and occupy any of said streets, the consent of the councils of the city or borough within which the said street lies, shall first be obtained by ordinance duly passed." By a supplementary act, which contained no direction requiring the consent of councils, the company was authorized to lay tracks between certain points, the route between which was partly within the city limits. *Held,* that before tracks could be laid under the later act, the consent of councils must be obtained.

2. Acts *in pari materia* must be construed together.

3. Though the company was incorporated in 1859, and the supplementary act was passed in 1861, the company was subject to the act of March 19, 1879 (P. L. 9), which provides that no street passenger railway shall be constructed without the consent of the local authorities.

APPEAL from Court of Common Pleas, No. 2, of *Allegheny County,* in equity.

Bill by the city of Allegheny against the Pittsburgh, Allegheny and Manchester Railway Company, setting forth that the defendants were engaged in tearing up the cartway of certain streets of that city for the purpose of laying a railroad along those streets without authority of law, the consent of the councils of said city not having been asked or obtained, and praying that defendant be enjoined from tearing up said cartway and laying said rails, and be compelled to restore said streets, etc.

The defendant in its answer averred that the work was being done under authority of the act of Assembly of May 16th, 1861, and that the consent of councils was not requisite.

The master to whom the case was referred, reported the following facts, as established by the bill, answer, and proofs :

The act of incorporation of the defendant company, approved April 12th, 1859 (P. L., 733), provided in §§ 1 to 7, for the organization of the company, described the kind of road to be built, named the streets and highways in Pittsburgh, Allegheny, the borough of Manchester, etc., on which the tracks of the railroad might be laid, gave power to the company to hold real estate, and to erect buildings and improvements, fixed the capital stock of the company, and divided

[Appeal of Pittsburgh, Allegheny and Manchester Passenger Railway Co. *et al.*]

the same into shares, provided for the issuing of letters patent to the company, conferring general and some specific corporate powers, regulated the declaration of dividends, gave the power to the corporation to borrow money, and regulated transfer of stock.

The eighth section required the company, in constructing their railway, to conform to the grades established, or thereafter to be established, of the several streets traversed by the said railway, and to keep said street, from curb to curb, in perpetual repair, at the proper expense of said company, and contained the following proviso: " *Provided*, That before said company shall use and occupy any of said streets the consent of the councils of the city or borough within which said street lies, shall first be obtained by ordinance duly passed." . . . The ninth section provided the terms and conditions on which the said railway company might acquire the right to use any plank-road or bridge. The other sections of the act provided the terms and conditions on which other passenger railway companies might use the tracks of the company incorporated by this act, required the company to purchase certain omnibus lines, defined the amount to be paid to the cities of Pittsburgh and Allegheny and the borough of Manchester upon cars and dividends, related to the gauge of the tracks, provided penalties for injury to the company's property, related to the grading and paving of streets, laying gas and water pipes, fixed the fare to be charged on the cars, required the cars to stop at certain points, and limited the time within which the work of constructing the road was to be begun and finished. " This act," says the master, " fully defines the powers of the corporation, and describes the streets and places on and over which their principal business of carrying passengers was to be carried on."

On May 16th, 1861, another act was passed by the General Assembly, entitled, " A supplement to an Act incorporating the Pittsburgh, Allegheny and Manchester Passenger Railway Company " (P. L., of 1862, p. 568), which contained but one section, as follows:

" SECTION 1. Be it enacted, etc., That the Pittsburgh, Allegheny and Manchester Passenger Railway Company be and they are hereby authorized and empowered to construct or extend their railway, by single or double track, from Federal Street, along Lacock Street, to Bank Lane, in the city of Allegheny ; and from the intersection of Federal and Ohio streets, in said city, along Ohio Street to Duquesne Borough; and, also, from Ohio Street to Spring Garden, in Reserve Township."

The company thereupon constructed a railway on La-

cock Street, and from Federal Street along Ohio Street to Duquesne Borough.

On May 24th, 1881, the board of directors of the defendant company resolved to build a branch railway from Ohio Street to Spring Garden, selected Chestnut Street and Spring Garden Avenue as the streets upon which to construct said railway, and gave orders to tear up the cartway of said streets, upon which this bill was filed by the solicitor of the city of Allegheny.

The master further reported that there were five practicable routes for a portion of the way from Ohio Street to Spring Garden; for the rest of the way there was but one practicable route. The master proceeded to report: "The supplementary act of 16th of May, 1861, gave power to construct or extend tracks over streets and over a locality not mentioned in the original act. The plaintiff contends that this supplementary legislation did not extend the franchises and powers of the company. It was simply an addition to the territory in which the powers and franchises might be exercised and used. . . . The defendants, however, claim that the granting clause of the act of 16th of May, 1861, has a much larger scope and significance, and in effect relieves the company of the burden of the proviso to the eighth section of the act, which requires the previous consent of the city or borough in which the street lay before the defendant company could lay its tracks on any street; but it is admitted by the defendants that all or nearly all of the provisions of the act of incorporation are applicable to the streets and places named in the supplementary act, especially such as relate to the grading of streets, the payment of tax on cars and dividends, and the requirement to keep the streets clean and in repair." . . . .

"The object of the proviso in the original charter doubtless is to preserve the public rights in the streets. Railway tracks might be a public nuisance on some streets. In some large cities they have been excluded from the great thoroughfares, while in others the cars are required to be run on single tracks, going on one street and returning on another. The councils of the city, representing the people of the municipal corporation, are supposed to be the proper judges of the wisdom and propriety of giving up the use of the streets of the city to passenger railway companies. There is nothing unreasonable in the proviso, nor is there any reason why it should be strictly construed, being in aid of the public interest. What potency can be found lurking in the granting words of the supplementary act of the 16th of May, 1861, strong enough, though unseen, to repeal a proviso in a statute

with which it is in no way inconsistent, and introduced into the statute for the protection of the public interests? The original act incorporating the company, and the supplementary act of May 16th, 1861, are *in pari materia*, and are to be construed together. The latter statute refers to the former to show the existence of the defendant company, its powers and franchises, and the law of its being and operation. The defendant company is referred to in the supplementary act as a corporation in existence, but it would be difficult to tell what its powers were, how it conveyed passengers, whether by horse or steam power; where its tracks were laid, the extent of its tracks, whether it had other powers besides those of carrying passengers, what obligations the company had assumed to the State or to the city where its operations were being carried on, without the reference which it makes in the title to the act of incorporation. The supplement, in its very nature, recognizes the act of incorporation and all legislation preceding the supplement, except in so far as it may be changed or modified by the supplement itself. The supplement and original act are in effect but one act, and the various provisions are to be construed in reference to each other and together, unless there be inconsistency and repugnancy, in which case the latest statute is to prevail. . . .

" Again, while the northern terminus of the proposed extension, to wit, Spring Garden, is fixed and determined by the act, the point of departure from Ohio Street is wholly uncertain. As shown by the testimony and found by the master, there are at least five different routes by which the company could have reached Spring Garden from Ohio Street over the streets of the city of Allegheny, but the supplementary act designates no route, nor does it even provide that the route shall be on and over streets. The words 'street' or 'highway' do not occur in this act. There is no power granted to use or occupy any street, much less a roving power to place their tracks on any of the streets north of Ohio Street, and east of Federal, and west of Duquesne Borough. It seems to the master that the legislative intention was merely to legalize the extension of the road from Ohio Street to Spring Garden, in conformity with the charter of incorporation."

That, acts *in pari materia* must be construed as one act, the master cited Union Canal Co. *v.* O'Brien, 4 Rawle, 358–360; Transportation Co. *v.* N. J. Central Railroad, 4 Vroom, 229.

The act approved 19th March, 1879, entitled, "An act to provide for the incorporation and *for the government and regu-*

*lation of street railway companies now incorporated*, or which may hereafter be incorporated, in cities of the second and third classes in this commonwealth" (P. L., page 9), in the sixteenth section, provides that "no street passenger railways, or any branch or extension thereof, shall be constructed within the limits of any city, borough, or township, without the consent of the local authorities thereof, and subject to the conditions imposed thereby."

This act the master further reported is applicable to the defendant.

The master therefore reported that a perpetual injunction should be granted.

Decree having been entered in accordance with the report, the appeal was taken.

*Hampton & Dalzell* and *A. P. Brown* for appellant.

The greater part of the proposed extension is without the city limits, and the legislature never intended to make this grant dependent on the councils of Allegheny. The charter of 1859 and its supplement contain the proviso, and the act of 1861 does not. The effect of the proviso should be limited to the enacting clause of the particular act in which it occurs: Pearce *v.* Bank of Mobile, 33 Ala., 693; Detroit *v.* Detroit Co., 12 Mich., 333; Jersey City *v.* Railroad Co., 5 C. E. Green's Ch., 360.

The route adopted was within the power conferred by the act, and the Court has no right to interfere with choice of roads where the termini are indicated in the act: Parke's Appeal, 14 P. F. Smith, 137.

*W. B. Rogers* and *D. T. Watson* for appellee.

A corporation claiming rights against the public, especially concerning the use of public streets, must show undoubted authority from the State. Commonwealth *v.* Erie and N. E. Railroad, 3 Casey, 339; Commonwealth *v.* Central Passenger Railroad, 2 P. F. Smith, 506.

All other charters of passenger railroad companies in Allegheny County, and all, or almost all, in Philadelphia County, require the consent of councils to be obtained to street occupation, and the new Constitution, art. 17, section 9, provides to the same effect. This settled policy of the State will regulate the interpretation of doubtful acts: Stevenson *v.* Deal, 2 Parsons, 212; Keeling's Road, 59 Pa. St. 358; Philadelphia *v.* Lombard Street Passenger Railroad, 5 Phila., 248.

The defendant having permissive authority to locate the branch to Spring Garden for twenty years, never acted on

this authority, but by locating its route along Ohio Street in 1866, exhausted its powers. It was then competent for the legislature to subject the defendant company to any reasonable conditions with reference to this right. The enactments are not *in pari materia:* Rich *v.* Keyser, 4 P. F. Smith, 86.

NOVEMBER 14TH, 1881.—PER CURIAM: We affirm this decree upon the opinion of the learned master in the Court below.

Judgment affirmed, and appeal dismissed at the cost of the appellant.